**Donald Leo McROY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–0301–CR–6.

Court of Appeals of Indiana.

Aug. 29, 2003.

Matthew Jon McGovern, Louisville, KY, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Donald Leo McRoy ("McRoy") was convicted of Battery, a Class A Misdemeanor,[1] and was adjudicated a habitual offender. McRoy appeals the trial court's ruling on his motion to correct error, which stayed execution of a $5,000 fine and $132 in court costs for more than seven months after McRoy had served the executed portion of his sentence. We affirm in part and vacate in part.

### Issue

McRoy raises two issues, which we consolidate and restate as whether the trial court had authority to issue an order staying execution of the fine and court costs.

### Facts and Procedural History

On December 6, 2001, McRoy struck Donald Reiner with a sledgehammer and logging chain during a fight. McRoy was appointed a public defender after he was charged with Attempted Murder and Aggravated Battery. A jury convicted McRoy of Battery.

The trial court sentenced McRoy to a maximum term of one year executed with 155 days credit, making McRoy eligible for release on December 21, 2002. The trial court also imposed the maximum fine of $5,000, along with court costs of $132. Defense counsel filed a motion to correct error, alleging that the trial court erred by not holding an indigency hearing to determine McRoy's ability to pay the fine and court costs.

At the December 4, 2001 hearing on the motion to correct error, McRoy testified that he alternated living with his wife and his girlfriend and that he owned no automobiles, stocks, bonds, or collectibles. His most valuable possession was his clothing. He also stated that, although he planned to work after his incarceration, he would not be able to pay the $5,000 fine and $132 in court costs due to his child support obligations. In response to McRoy's motion to correct error, the trial court stayed execution of the order until July 31, 2003. McRoy requested specific findings that he was indigent and that he would not be imprisoned for failing to pay the fine and court courts. The trial court agreed that McRoy could not be imprisoned for failure to pay the fine and court costs prior to July 31, 2003, but concluded, "[T]hat's something I'll have to decide on that date." (Motion to Correct Error Tr. 15).

When McRoy asked if the trial court had deferred the indigency hearing until July, the court replied:

> If we punish someone for not paying user fees on a probation program even though they may not have money, if the individual had the opportunity to and the ability to engage in gainful employment but voluntarily chose not to do that, then the individual can be punished for failing to pay.
>
> . . . .

---

1. IND.CODE § 35–42–2–1.5.

And I'm giving the defendant until July 31, 2003, to pay the fine and costs because I believe he is and always has been for all times relevant able bodied and capable of gainful employment.

(Motion Correct Error Tr. 14). McRoy informed the trial court that he had no funds to hire appellate counsel, and the trial court appointed a public defender to serve as his counsel for purposes of appeal. This appeal ensued.

## Discussion and Decision

### A. Standard of Review

■■■ Generally, sentencing decisions are committed to the sound discretion of the trial court, and we will reverse a decision only upon a showing of a manifest abuse of discretion. *Like v. State*, 760 N.E.2d 1188, 1191 (Ind.Ct.App.2002), *modified on reh'g on other grounds*, 766 N.E.2d 416 (Ind.Ct.App.2002). An abuse of discretion occurs if the court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Palmer v. State*, 704 N.E.2d 124, 127 (Ind. 1999). However, the trial court's sentencing authority is derived only from the legislature and, therefore, must conform to statutory parameters. *Gilreath v. State*, 748 N.E.2d 919, 920 (Ind.Ct.App.2001).[2] Thus, to the extent that this case rests

upon statutory interpretation, our review is de novo. *Ashley v. State*, 757 N.E.2d 1037, 1039 (Ind.Ct.App.2001). As such, we independently review the meaning of the relevant statutes and apply the meaning to the facts. *Bush v. State*, 772 N.E.2d 1020, 1023 (Ind.Ct.App.2002), *trans. denied.* Further, penal statutes are to be strictly construed against the State to avoid enlarging them by intendment or implication beyond the fair meaning of the language used. *State v. Gibbs*, 769 N.E.2d 594, 596 (Ind.Ct.App.2002), *trans denied.*

### B. Analysis

■■■ McRoy challenges the trial court's authority to impose the fine and court costs, indicating that all evidence demonstrates that he was indigent. Initially, we recognize that the trial court did not formally find McRoy to be indigent. The court acknowledged that for the purpose of appointing pauper counsel for trial and appeal, McRoy was indigent. *See Ridley v. State*, 690 N.E.2d 177, 182 (Ind. 1997) (affirming the trial court's imposition of fines and costs in the absence of separate hearing where the court was aware of the defendant's indigency status through appointment of pauper appellate counsel), *overruled on other grounds by Whedon v. State*, 765 N.E.2d 1276 (Ind.2002).[3] How-

---

2. Pursuant to Indiana Code Section 35–50–3–2, the trial court may impose a sentence not more than one-year and assess a fine not more than $5,000 for a Class A Misdemeanor. Further, Indiana Code Section 33–19–5–1 authorizes the trial court to impose certain "court costs." *See Mathis v. State*, 776 N.E.2d 1283, 1288–89 (Ind.Ct.App.2002).

3. On appeal McRoy requests that we hold that he was indigent as a matter of law. Another panel of this court recently held that, if a defendant is indigent for purposes of appointment of pauper counsel, as a matter of law, the defendant is also indigent for purposes of assessing any fines and costs. *Clenna v. State*, 782 N.E.2d 1029, 1034 (Ind.Ct.App.2003). In

contrast, other panels have recited the principle that indigency for the purpose of appointing defense counsel is not conclusive with respect to a determination of whether the defendant is also indigent with regard to the ability to pay fines and court costs. *See, e.g., Dunkley v. State*, 787 N.E.2d 962, 965 (Ind.Ct. App.2003) (holding that a determination of indigency for the purpose of appointing defense counsel is not conclusive with regard to a defendant's ability to pay a fine); *Briscoe v. State*, 783 N.E.2d 790, 793 (Ind.Ct.App.2003) (holding that appointment of counsel may imply a defendant's indigency, although it is not conclusive as to the defendant's ability to pay fees); *A.E.B. v. State*, 756 N.E.2d 536, 544

ever, the court's determination that McRoy was able to work and its attempt to defer a further determination of indigency strongly suggest that the court did not believe McRoy to be indigent for the purpose of paying the fine and court costs.

 Regardless, a finding of indigency does not prohibit the trial court from imposing a fine and costs. Rather, a finding of indigency prohibits the trial court from subsequently imprisoning a defendant, while under the criminal court's authority, for failure to pay the fine and costs imposed. Indiana Code Section 35–50–3–2 provides that a person who commits a Class A misdemeanor "may be fined not more than $5,000." Indiana Code Section 33–19–5–1 authorizes the collection of a certain "criminal costs fee." Neither statute limits the imposition of fines and costs to solvent defendants. Further, our case law demonstrates that the trial court may impose fines and costs upon an indigent defendant. *See, e.g., Whedon,* 765 N.E.2d at 1279 (concluding that a trial court may impose fines or costs upon an indigent defendant, but cannot imprison the indigent defendant for failure to pay the fines or costs); *Turner v. State,* 755 N.E.2d 194, 200 (Ind.Ct.App.2001), *trans. denied.* Thus, the trial court acted within its discretion when it assessed the fine and costs against McRoy.[4]

 In addition to imposing a fine and court costs, the trial court suspended payment of the costs and fines until July 31, 2003, at which time the trial court would further consider the issue of McRoy's indigency. However, a trial court's authority over a defendant exists only as long as the court has authority to act. *Beck v. State,* 790 N.E.2d 520, 522 (Ind.Ct.App.2003) (holding that the trial court had no authority to sentence the defendant to a combined prison term and probation exceeding one year for a misdemeanor conviction).

 Here, the trial court acknowledged McRoy's ability to work and compared its authority in this case to its authority in circumstances where a probationer was capable of work but refused to engage in gainful employment to pay the fine. It is true that probation may be revoked where a probationer recklessly, knowingly, or intentionally fails to comply with a sentence that imposes financial obligations. Ind.Code § 35–38–2–3(b)(2)(f). However, McRoy was not given a probationary term and could not have been placed on probation because he was ordered to serve the maximum sentence. The trial court's authority over McRoy ended on December 21, 2002. Therefore, we conclude that the trial court had no authority to conduct a hearing on July 31, 2003, some seven months after McRoy completed the maximum sentence that could be imposed by the trial court.[5]

(Ind.Ct.App.2001) (holding that the appointment of counsel was not conclusive as to the defendant's ability to pay costs); *see also Clenna,* 782 N.E.2d at 1035 (Baker, J., concurring in result) (disagreeing with the proposition that, if a defendant is found to be indigent as to attorney's fees, the defendant is also as a matter of law indigent as to any fines and costs assessed). We believe the latter is the preferable view, as a trial court may find that a defendant does not have the financial ability to hire an attorney yet is able to pay fines or court costs. Additionally, a defen-

dant's financial status may change from the time trial counsel is appointed to the time of sentencing, when fines and costs are imposed. *See Whedon v. State,* 765 N.E.2d 1276, 1279 (Ind.2002).

4. McRoy does not contest the amount of the fine and costs.

5. We recognize that in *Whedon,* our supreme court stated: "[A] defendant's financial resources are more appropriately determined not at the time of initial sentencing but at the

## Conclusion

Regardless of McRoy's indigency status, the trial court was not precluded from imposing a fine and costs upon McRoy. However, the court was without authority to conduct further proceedings some seven months after McRoy had served the maximum sentence for the offense. Therefore, we affirm the trial court's imposition of the fine and costs, but order that portion of the trial court's sentencing order that sets further proceedings beyond December 21, 2002 to be vacated.

Affirmed in part and vacated in part.

BROOK, C.J., and NAJAM, J., concur.

conclusion of incarceration, thus allowing consideration of whether the defendant may have accumulated assets through inheritance or otherwise." 765 N.E.2d at 1279. And, although the Court's statement "[m]ay be interpreted to suggest that hearings subsequent to sentencing should be held to determine a defendant's indigency, *Whedon* did not suggest a procedure for doing so." *Briscoe*, 783 N.E.2d at 793. However, we note that Indiana Code Sections 35–38–1–18(b)(1) and 33–19–2–3(b)(1) provide a civil remedy to recover these unpaid fines and costs where the criminal court's authority to act has expired.